UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------------- X
:
ISAAC ALTMAN, *for himself and all others similarly*     :     13-CV-6502 (ARR)(CLP)
*situated*,                                               :
                                                         :     <u>NOT FOR ELECTRONIC</u>
               Plaintiff,                                :     <u>OR PRINT PUBLICATION</u>
                                                         :
          -against-                                      :     <u>OPINION & ORDER</u>
                                                         :
J.C. CHRISTENSEN & ASSOCIATES, INC.,                     :
                                                         :
               Defendant.                                :
                                                         :
--------------------------------------------------------------------- X

ROSS, United States District Judge:

Isaac Altman ("Altman" or "plaintiff") brings this class-action suit against J.C.

Christensen & Associates, Inc. ("J.C. Christensen" or "defendant") for alleged violations of the

Fair Debt Collection Practices Act, 15 U.S.C. § 1692 <u>et</u> <u>seq</u>. ("FDCPA"). Specifically, Altman

alleges that J.C. Christensen, a debt collector, used a "false, deceptive, or misleading

representation or means in connection with the collection of [a] debt" in violation of 15 U.S.C. §

1692e when defendant sent Altman a letter offering to settle Altman's purported debt for an

amount less than its full value and highlighting the "savings" to Altman that would result from

settlement but failing to alert plaintiff to potential income tax consequences of settlement.

Having answered the complaint, J.C. Christensen moves for judgment on the pleadings under

Federal Rule of Civil Procedure 12(c). The court must now consider whether a debt collection

letter informing a debtor of the "savings" that will result from an offered settlement on the debt

is deceptive or misleading under the FDCPA if it fails to advise the debtor that the settlement

offer may result in tax consequences to the debtor. For the reasons stated below, the court agrees

with defendant that it was not required to alert plaintiff to potential tax consequences, and the complaint is dismissed.

## BACKGROUND

Altman's complaint alleges the following facts, which are treated as undisputed for purposes of the instant motion. Defendant is a "debt collector" as that term is defined in the FDCPA and has its principal place of business in Sauk Rapids, Minnesota. Compl., DE #1, ¶¶ 5-7. Plaintiff is a "consumer" within the meaning of the statute and resides in Brooklyn, New York. Id. ¶¶ 2-3. Defendant sought to collect a "debt," as that term is defined in the FDCPA, from plaintiff. Id. ¶ 4. Specifically, on or about May 17, 2013, defendant sent Altman a letter concerning the debt purportedly owed by him to "Bank of America/FIA Card Services N.A." (the "Letter") . Id. ¶ 10. A copy of the Letter, which is titled "NOTICE OF COLLECTION AND SPECIAL OFFER," is attached to plaintiff's complaint as Exhibit 1. Id., Ex. 1. The Letter identified "Cavalry SPV I LLC" as the current creditor and the total due on the alleged debt as $6,068.13. Id. The Letter indicated that J.C. Christensen had been authorized to negotiate settlement terms with Altman and offered him three potential settlement options. Id. The Letter stated in pertinent part:

> In an effort to resolve this matter as quickly as possible we have been authorized to negotiate GENEROUS SETTLEMENT TERMS on this account. Please review the following settlement opportunities to make voluntary resolution of your account a reality:
>
> 1) **Settle your account now for a lump-sum payment of $3,155.43. That is a savings of 48% on your outstanding account balance.**
>
> 2) **Extend your time and settle your account in three payments of $1,314.76. This is a savings of $2,123.85 on your outstanding account balance.**
>
> 3) **Further extend your time and pay your balance in full in 12 payments of $505.68.**

Id. (emphasis in original). The Letter did not indicate that a settlement under one of the first two options might result in income tax consequences to Altman; nor did it suggest that plaintiff consult a tax advisor about the potential consequences of a settlement.

On November 22, 2013, Altman commenced the present action alleging that the Letter constituted a deceptive debt collection practice in violation of 15 U.S.C. §1692e(10). Specifically, Altman alleges that the Letter was deceptive because it failed to advise him that his "savings" described in the Letter might be taxable under the Internal Revenue Code as income from discharge of indebtedness.[1] According to Altman, the description of his potential "savings" was misleading because the actual net amount of savings to plaintiff would be the amount of the debt forgiven minus any taxes payable by plaintiff due to the forgiveness of part of his debt, i.e., plaintiff's actual out-of-pocket savings "might well not be as large as they were stated to be in the Letter." Compl. ¶ 15.

## DISCUSSION

### I. Standard of Review

J.C. Christensen moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). In ruling on a motion for judgment on the pleadings under Rule 12(c), a court should apply "the same standards that are employed for dismissing a complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Ad-Hoc Comm. of Baruch Black & Hispanic Alumni Ass'n v. Bernard M. Baruch College, 835 F.2d 980, 982 (2d Cir. 1987); accord Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010). To survive a motion to dismiss under Rule 12(b)(6), the complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). When ruling on a motion to

---

[1] Under the Internal Revenue Code, "gross income" includes "income from discharge of indebtedness," which must be reported unless an exception or exclusion applies to a taxpayer. 26 U.S.C. § 61(a)(12).

dismiss, the court must accept all factual allegations in the pleadings as true and draw all reasonable inferences in favor of the non-moving party.  Id. at 555-56; Freedom Holdings, Inc. v. Spitzer, 363 F.3d 149, 151 (2d Cir. 2004).  Courts are "not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In assessing the legal sufficiency of a pleading, "while courts generally do not consider matters outside the pleadings, they may consider documents attached to the pleadings, documents referenced in the pleadings, or documents that are integral to the pleadings."  Smart v. Goord, 441 F. Supp. 2d 631, 637 (S.D.N.Y. 2006); accord Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001) (citing "well-established principle" that courts may look to "documents attached to the pleadings or . . . incorporated by reference").  Accordingly, the court will consider the Letter at issue, as it was attached to Altman's complaint as well as referenced therein.

## II.     Whether the Letter Violated the FDCPA

The FDCPA, which was enacted to prevent abusive and deceptive practices by third party debt collectors, expressly prohibits a number of specific practices deemed particularly offensive.  In addition to its specific prohibitions, the FDCPA also contains a catch-all provision, which prohibits any debt collection practice that is "false, deceptive, or misleading."  15 U.S.C. § 1692e; see also Mebane v. GC Servs. Ltd. P'ship, 481 F. Supp. 2d 249, 251 (S.D.N.Y. 2007).  In determining whether a particular practice is "false, deceptive, or misleading," courts apply an objective standard based on the "least sophisticated consumer."  Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 90 (2d Cir. 2008); Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993).  Generally, a deceptive collection letter will be one that contains confusing or

contradictory language about the consumer's rights, Savino v. Computer Credit, Inc., 164 F.3d 81, 85 (2d Cir. 1998), or that fails to include specific provisions mandated by the statute, DeSantis v. Computer Credit, Inc., 269 F.3d 159, 161 (2d Cir. 2001). However, the objective least-sophisticated-consumer standard serves the FDCPA's "dual purpose" of protecting consumers while also "protect[ing] debt collectors from unreasonable constructions of their communications." Jacobson, 516 F.3d at 90. "[I]n crafting a norm that protects the naïve and the credulous the courts have carefully preserved the concept of reasonableness." Clomon, 988 F.2d at 1319. "Accordingly, the FDCPA does not aid plaintiffs whose claims are based on bizarre or idiosyncratic interpretations of collection notices." Jacobson, 516 F.3d at 90 (internal quotation marks omitted). "The standard presumes the consumer at least 'possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care.'" Mebane, 481 F. Supp. 2d at 252 (quoting Clomon, 988 F.2d at 1319).

Considering the undisputed facts in this case, the court concludes that the Letter would not mislead the least sophisticated consumer. As Altman appears to concede, there is no requirement in the FDCPA that a debt collection letter inform a debtor of the potential tax implications of a settlement offer. See Landes v. Cavalry Portfolio Servs., LLC, 774 F. Supp. 2d 800, 803 (E.D. Va. 2011) ("[T]here is no language anywhere in the FDCPA that mandates such affirmative disclosures [regarding possible tax consequences] by a debt collector."). Nonetheless, plaintiff argues that, by undertaking to spell out for Altman the precise percentage of "savings" on his "outstanding account balance" that would result from the settlement offer, J.C. Christensen assumed the obligation to inform him that a settlement might result in tax consequences (or, at least, to recommend that he consult a tax advisor). The court agrees with defendant that this goes too far in stretching the limits of reasonable interpretation under the

FDCPA. See Schaefer v. ARM Receivable Mgmt., Inc., Civil Action No. 09-11666-DJC, 2011 WL 2847768, at *5 (D. Mass. July 19, 2011) ("[R]equiring, as a matter of law, debt collectors to inform a debtor of such a potential collateral consequence of settling a pre-existing debt seems far afield from even the broad mandate of FDCPA to protect debtors from abusive debt collection practices.").

In Landes v. Cavalry Portfolio Services, LLC, the District Court for the Eastern District of Virginia cogently addressed nearly the same circumstances as are presented here. In Landes, the defendant debt collector had sent the plaintiff a letter offering options to settle the plaintiff's purported debt on terms providing a 10 or 20 percent discount on the amount owed. 774 F. Supp. 2d at 801. The letter, sent during tax season, stated that "[defendant] wants you to get the most out of your tax refund this year" and that "[defendant] wants you to get tax season savings!," presumably with the intent that the plaintiff debtor could use her tax refund to settle her debt. Id. Under those facts, the Landes court rejected the plaintiff's argument that the debt collector's failure to affirmatively disclose the income tax consequences of the settlement offers was misleading. The court concluded: "[A] careful reading of the letter reveals that the only promise being made by [defendant] was to reduce the amount of indebtedness by a specified percentage if the debtor paid in full or on a specified payment schedule. Nowhere did [defendant] promise that the discharge of indebtedness would or would not have potential tax consequences, and under the circumstances, no reasonable debtor could construe the language to suggest otherwise." Id. at 804; see also Schaefer, 2011 WL 2847768, at *5 (following Landes).

This court agrees with the decision in Landes. Although the requested tax disclosure in Landes was more specific than the disclosure demanded by Altman here,[2] the reasoning from

---

[2] In Landes, the plaintiff argued that the debt collector was required to affirmatively advise her that she would be required to report the discharged debt as income on which she might have to pay taxes. 774 F. Supp. 2d at 804.

that case is equally applicable to the facts at hand. As in <u>Landes</u>, the only promise made by J.C. Christensen in its Letter to Altman was "to reduce the amount of indebtedness by a specified percentage if the debtor paid in full or on a specified payment schedule," <u>i.e.</u>, here a specified reduction in Altman's "outstanding account balance" if he chose one of the settlement options. As was the case in <u>Landes</u>, nothing whatsoever in the Letter can be reasonably construed as a representation by J.C. Christensen as to the collateral consequences---tax-related or otherwise--- of settling the debt at a reduction. Moreover, Altman's argument here is even weaker than the plaintiff's argument in <u>Landes</u> because, unlike in <u>Landes</u> where the debt collection letter at least mentioned "tax season savings," 774 F. Supp. 2d at 801, there is simply no mention of taxes or tax savings whatsoever in the Letter to Altman.

The fact that, here, the Letter to Altman used the word "savings" in spelling out for Altman what percentage or dollar value the "savings . . . on [his] account balance" would be is a distinction without a difference. The addition of the "savings" statement in the Letter simply makes plain what is already obvious: When you settle a purported $6,068.13 debt for a single $3,155.43 payment, you have paid your creditor 48% less than the $6,068.13 balance on your account. When you instead settle that same $6,068.13 debt for three payments of $1,314.76, you have paid a total of $2,123.85 less to your creditor than the amount shown as the outstanding balance on your account. Put simply, J.C. Christensen's "savings" representations involve nothing more than "doing the math" on the settlement terms. They cannot reasonably be construed as implying what extra money plaintiff will or will not have "net" in his pocket after the settlement; nor can they reasonably be understood as representing anything about collateral

___

Here, plaintiff asserts that he is not seeking such a specific disclosure but instead seeks only a required general disclosure along the lines of that suggested by the court in <u>Landes</u>, <u>i.e.</u>, "accepting this offer may or may not result in tax consequences." <u>Id.</u> Nonetheless, as the court noted in <u>Landes</u>, even that general disclaimer is not required by the FDCPA where the debt collector has made absolutely no representations as to tax implications. <u>Id.</u> ("[A]s explained above, the FDCPA itself does not require such disclosures.").

consequences or taxes. The "savings" statement does nothing more than break down for plaintiff how much his payment will be reduced from what is shown as due on his "outstanding account balance." This is not a representation one way or the other about tax implications. Under these circumstances, such a statement cannot be false, deceptive, or misleading under the applicable standard in this circuit.[3]

## CONCLUSION

For the foregoing reasons, J.C. Christensen's motion for judgment on the pleadings is granted, and Altman's complaint is dismissed. The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.


__/s/_____
Allyne R. Ross
United States District Judge

Dated:          June 11, 2014
                Brooklyn, New York

---

[3] Plaintiff asks this court to follow the decision of the District Court for the Northern District of New York in Ellis v. Cohen & Slamowitz, 701 F. Supp. 2d 215 (N.D.N.Y. 2010). In Ellis, a debt collection letter offered "a savings of 30% off on the outstanding balance owed on [Ellis's] account" but failed to notify Ellis of the potential tax consequences. Id. at 218. While expressing doubts as to whether such a failure was intended to fall with the scope of the FDCPA, the court nonetheless concluded that Ellis had alleged a cause of action under the FDCPA and allowed the claim to proceed, along with other FDCPA claims, beyond an initial motion to dismiss "at this juncture." Id. at 220. However, the court finds that Ellis has neither precedential nor persuasive value, as it lacks well-developed consideration of the question presented to this court. Although seemingly doubtful as to the merits of such a claim, the Ellis court appears to have let it go forward at that point in the proceedings, which were continuing on other claims in any event, so as to defer decision on the issue. Nonetheless, to the extent that Ellis suggests that a viable FDCPA claim could arise under the facts alleged in this case, this court disagrees.